**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LAURA LEACH** | § | |
| *Plaintiff*, | § | |
| | § | |
| **vs.** | § | **Civil Action No. 3:l7-cv-02284-S** |
| | § | |
| | § | |
| **JOSE LEON-RAMIREZ AND GLOBAL** | § | |
| **TRANSPORT CORP** | § | |
| *Defendants*. | | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff LAURA LEACH, complaining of Defendants JOSE LEON-RAMIREZ and GLOBAL TRANSPORT CORP.

**AUTHORITY TO FILE AMENDED PLEADING**

1.      Defendants removed this case from the 249th district court of Johnson County, Texas and by a new Amended Agreed Scheduling Order (Doc #23), this Court set an amended pleading deadline of June 12, 2018. Accordingly, leave of Court is not necessary for the filing of Plaintiff's First Amended Complaint.

**PARTIES**

2.      Plaintiff LAURA LEACH resides at 305 S. Hickory St., Venus, Texas 76084.

3.      Defendant JOSE LEON-RAMIREZ is a resident of the State of Nevada and resides at 3600 Charleston Blvd. 6, Las Vegas, NV 89121 who has answered so no summons is required.

---

4      Defendant   GLOBAL   TRANSPORT   CORP   (hereinafter   "GLOBAL
TRANSPORT") is a Nevada corporation with its principle place of business in Nevada which is
deemed to be a citizen of Nevada which has answered so no summons is required.

## JURISDICTION AND VENUE

5.      This court has jurisdiction over the lawsuit under the provisions of 28 U.S.C.
Section 1332.  There is complete diversity of citizenship, the parties to this lawsuit are citizens of
different states and the matter in controversy exceeds the sum or value of $75,000.00 exclusive of
interest and costs.

6.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the crash giving rise to
this suit occurred in Alvarado, Johnson County, Texas which is located in the Northern District of
Texas.

## FACTUAL BACKGROUND

7.      On October 2, 2015, LAURA LEACH was traveling westbound on US Highway
67 and as she approached the intersection of US Highway 67 and Cummings Drive, the light turned
red and she came to a stop behind two other vehicles, a 2006 Honda driven by James Stewart and
a 2003 Chevrolet Silverado driven by Jeffrey Macon. Shortly thereafter, a 2007 Honda Civic
driven by Kevin Ferm stopped behind the Leach vehicle and then a 2007 Saturn driven by Cheryl
Binder stopped behind the Ferm vehicle. Each of the drivers of these five vehicles saw and stopped
at the red light without any idea that JOSE LEON-RAMIREZ was driving the GLOBAL
TRANSPORT CORP truck while distracted directly behind them.

8.      JOSE LEON-RAMIREZ plowed the GLOBAL TRANSPORT truck into the
Binder Saturn at such high speed that he caused a massive six-vehicle chain-reaction crash. The

force of the initial impact propelled the Binder vehicle into the Ferm vehicle and then the Ferm vehicle slammed into the Leach vehicle with such force that the Leach vehicle then hit the Stewart vehicle and the Stewart vehicle impacted the Macon pickup (hereinafter "the Crash").

9.      The Crash caused injuries and resulting damages to LAURA LEACH.

10.     JOSE LEON-RAMIREZ was driving while distracted at the time of the Crash. He claims he was distracted by looking in his rear-view mirror at a truck behind him for such a long time that he never saw the red light or the five stopped vehicles ahead of him.

11.     JOSE LEON-RAMIREZ also admitted that he was interacting with his cell phone in the minutes prior to the crash. Prior to the Crash, GLOBAL 's owner, Myslan Valdivia, warned JOSE LEON-RAMIREZ on a daily basis not to interact with his phone while driving because it was so dangerous. Nonetheless, JOSE LEON-RAMIREZ may have consciously disregarded those instructions and been distracted by prohibited cell phone interaction immediately prior to the Crash.

12.     At the time of the Crash, JOSE LEON-RAMIREZ was driving the GLOBAL TRANSPORT truck in interstate commerce in the course and scope of his employment with GLOBAL TRANSPORT and was governed by the Federal Motor Carrier Safety Regulations (FMCSR's).

13.     At the time of the Crash, GLOBAL TRANSPORT was a motor carrier operating in interstate commerce and licensed by the Federal Motor Carrier Safety Administration.

14.     To be a licensed motor carrier, GLOBAL TRANSPORT had to submit an OP-1 Application for Motor Carrier and Broker Authority Form to the Federal Motor Carrier Safety

Administration with a Safety Certification signed and verified under penalty of perjury under the laws of the United States that the following is true and correct:

Applicant (GLOBAL TRANSPORT) has access to and is familiar with all applicable U.S. DOT regulations relating to the safety operation of commercial motor vehicles and the safe transportation of hazardous materials and it will comply with those regulations.  In so certifying, applicant is verifying that, at a minimum, it:

(1)     Has in place a system and an individual responsible for ensuring overall compliance with the Federal Motor Carrier Safety Regulations;

(2)     Can produce a copy of the Federal Motor Carrier Safety Regulations and the Hazardous Materials Transportation Regulations;

(3)     Has in place a driver safety training/orientation program;

(4)     Has prepared and maintains an accident register (49 CFR 290.15);

(5)     Is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR Part 391);

(6)     Has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance (49 CFR Parts 392, 395 and 396); and

(7)     Is familiar with and will have in place on the appropriate effective date, a system for complying with U.S. DOT regulations governing alcohol and controlled substances testing requires (40 CFR 382 and 49 CFR Part 40).

15.     Despite the sworn Safety Certification made when GLOBAL TRANSPORT submitted its OP-1 form to the Federal Motor Carrier Safety Administration, GLOBAL TRANSPORT and its owner, Myslan Valdivia, from the inception of the company up until the time of the Crash:

(1)     Did not have access to and was not familiar with all applicable U.S. DOT regulations relating to the safety operation of commercial motor vehicles;

(2)     Did not comply with those regulations;

(3)     Did not have in place a system and an individual responsible for ensuring overall compliance with the Federal Motor Carrier Safety Regulations;

(4)     Could not produce a copy of the Federal Motor Carrier Safety Regulations and the Hazardous Materials Transportation Regulations;

(5)     Did not have in place a driver safety training/orientation program;

(6)     Was not familiar with DOT regulations governing driver qualifications and did not have in place a system for overseeing driver qualification requirements and

(7)     Did not have in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance.

16.     At and prior to the time of the Crash, GLOBAL TRANSPORT consisted of two trucks and drivers.  At all operable times, GLOBAL TRANSPORT's driver/owner and person in charge of screening, hiring, training and supervising its drivers was Myslan Valdivia.

17.     Myslan Valdivia could not satisfy the requirements of FMCSR 391.11 which states that a person is qualified to drive a commercial motor vehicle if he "can read and speak the English language sufficient to converse with the general public."

18.     Myslan Valdivia did not know he had to know and follow the FMCSR's and had never read them in violation of basic trucking safety standards as well as FMCSR §392.1 which provides "every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation or driving of commercial motor vehicles, or the hiring, supervising, training, assigning or dispatching of drivers, shall be instructed in and comply with the rules in this part"  as well as the sworn Safety Certification in the OP-1 form.

19.     JOSE LEON-RAMIREZ obtained the commercial driver's license under which he was driving at the time of the Crash by scamming the system.  He failed the commercial driver's license exam in Nevada so he flew to Florida, misrepresented that he was a Florida resident,

attended a seven-day truck driving school, took the Florida commercial driver's license exam in Spanish and then transferred that license to Nevada.

20.     JOSE LEON-RAMIREZ did not disclose that he had been denied a license to operate a commercial motor vehicle in Nevada in his application for employment with GLOBAL TRANSPORT in violation of FMCSR §391.21(b)(9). Had GLOBAL TRANSPORT owner, Myslan Valdivia, known this required disclosure, he would never have hired JOSE LEON-RAMIREZ.

21.     JOSE LEON-RAMIREZ did not sign, complete and certify the truthfulness of his Application for Employment in violation of FMCSR §391.21(b).

22.     JOSE LEON-RAMIREZ failed to disclose his past employment with MVP Trucking and Universal Baking in his Application for Employment in violation of FMCSR §391.21(b)(10) and (11).

23.     JOSE LEON-RAMIREZ could not satisfy the requirements of FMCSR §391.11 which states that a person is qualified to drive a commercial motor vehicle if he "can read and speak the English language sufficient to converse with the general public." He could not pass the Nevada CDL test, he required an interpreter for his deposition, he could not complete his Global Transport driver application and he admitted that he could not read and understand English.

24.     JOSE LEON-RAMIREZ's inability to read English is the reason why he had never read and had no knowledge of the FMCSR's at the time of the crash. A prior employer had given him the FMCSR's but he could not read them because they were in English.

25.     GLOBAL TRANSPORT never inquired regarding JOSE LEON-RAMIREZ's knowledge of the FMCSR's, provided him instruction or training in the FMCSR's or provided him with a copy of the FMCSR's.

26.     JOSE LEON-RAMIREZ's ignorance of the FMCSR's caused the Crash since he did not comply with the following FMCSR's, which if known and followed by him, would have prevented this crash:

1.     §383.111 Required knowledge

(7) Visual search – the importance of proper visual search and proper visual search methods, including:

(i) seeing ahead and to the sides.

(9) Speed Management -- The importance of understanding the effects of speed, including:

(i) speed and stopping distance;

(iv) speed and visibility; and

(v) speed and traffic flow.

(10) Space Management – the procedures and techniques for controlling the space around the vehicle, including:

(i) the importance of space management;

(ii) space cushions, e.g. controlling space ahead; and

(iv) space for traffic gaps.

2.     §383.113 Required Skills

(c)     Safe driving skills – All applicants for a CDL must possess and demonstrate the following safe driving skills for their vehicle class: These skills should include proper visual search methods, speed control based on traffic conditions and following distance to maintain control.

27.     GLOBAL TRANSPORT failed to make an appropriate and thorough inquiry as to JOSE LEON-RAMIREZ's past employers and motor carrier employers as required by FMCSR §391.21(10) and (11).

28.     GLOBAL TRANSPORT failed to make investigation and inquiry into JOSE LEON RAMIREZ's past employers as required by FMCSR §391.23 and keep a written record regarding its efforts to comply with this FMCSR.

29.     GLOBAL TRANSPORT failed to conduct a road test as required by FMCSR §391.31 and/or to keep a written record of the certificate of road test as required by the FMCSR's.

30.     Once GLOBAL TRANSPORT hired JOSE LEON-RAMIREZ, it had no one with appropriate trucking safety knowledge or training to train and supervise JOSE LEON-RAMIREZ. Its owner and person in charge of safety, Myslan Valdivia, had no formal safety training other than a 1 ½ hour internet class, he had never read and had no knowledge of the FMCSR's and he did not know his company and drivers needed to comply with them in violation of FMCSR §392.1 which provides "every motor carriers, its officers, agents, representatives, and employees responsible for the management, maintenance, operation or driving of commercial motor vehicles, or the hiring, supervising, training, assigning or dispatching of drivers, shall be instructed in and comply with the rules in this part" as well as the sworn Safety Certification in the OP-1 form.

### CAUSES OF ACTION AGAINST JOSE LEON-RAMIREZ

31.     Paragraphs 1-30 are incorporated by reference herein.

32.     On October 2, 2015, JOSE LEON-RAMIREZ owed a duty to those lawfully on the roadway, including but not limited to LAURA LEACH and the others involved in the Crash, to

operate the GLOBAL TRANSPORT truck with ordinary care, meaning that degree of care that would be used by a person of ordinary prudence under the same or similar circumstance.

33.     JOSE LEON-RAMIREZ was distracted and took his eyes off the road in front of him for such a long period that a light changed to red and five cars stopped in front of him without him seeing such action causing him to hit the last vehicle at a high rate of speed and causing a six vehicle chain-reaction.

34.     JOSE LEON-RAMIREZ was negligent by:

a.     Failing to keep his eyes on the roadway ahead of him for such a long period that he failed to see a red light and five vehicles stopped in front of him;

b.     Driving while distracted;

c.     Driving while looking in his rear-view mirror rather than on the road ahead;

d.     Driving while under the distracting influence of interacting with his cell phone;

e.     Driving without the visual search knowledge required by FMCSR §383.111;

f.     Driving without the speed management knowledge required by FMCSR §383.111;

g.     Driving without the space management knowledge required by FMCSR §383.111;

h.     Driving without the safe driving skills of proper visual search methods required by FMCSR §383.113;

h.     Driving without the safe driving skills of speed control based on traffic conditions required by FMCSR §383.113;

i.     Driving without the safe driving skills of following distance to maintain control required by FMCSR §383.113;

j.     Failing to keep a proper lookout;

k.     Failing to timely apply his brakes;

l.     Failing to control his speed;

m.     Failed to read, know and comply with the Federal Motor Carrier Safety Regulations;

n.     Violation of §545.351(b)(2) of the Texas Transportation Code by failing to control the speed of his vehicle as necessary to avoid colliding with another person or vehicle that is on the highway in compliance with the law and the duty of each person to use due care;

o.     Violation of §545.062(a) of the Texas Transportation Code by failing to maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, he can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway;

p.     Failing to properly and candidly complete his application for employment with GLOBAL TRANSPORT in violation of FMCSR §391.21 and

q.     Failing to operate his truck at the time of the Crash as an ordinary prudent trucker would operate his vehicle under the same or similar circumstances.

35.     The negligent acts set forth in Paragraph 34 a.- q., which are adopted herein by reference, when viewed objectively from the standpoint of JOSE LEON-RAMIREZ, such acts at

the time of their occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and JOSE LEON-RAMIREZ had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Accordingly, such acts also constitute gross negligence which will be proven by clear and convincing evidence and for which exemplary damages are sought.

36.     The negligent and grossly negligent acts set forth above were the proximate cause of the Crash, Plaintiff's injuries and her resulting damages.

## CAUSES OF ACTION AGAINST GLOBAL TRANSPORT

37.     Paragraphs 1-36 are incorporated by reference herein.

38.     JOSE LEON-RAMIREZ was in the course and scope of his employment with GLOBAL TRANSPORT at the time of the Crash so GLOBAL TRANSPORT is liable for the acts of negligence as set forth in Paragraph 34 a.- q. above under *respondeat superior* and the statutory employment doctrine.

39.     As a licensed motor carrier in interstate commerce, GLOBAL TRANSPORT had a regulatory and common law duty to properly screen and investigate drivers before hiring them and putting them on the road to drive its trucks.

40.     GLOBAL TRANSPORT was negligent in the hiring and screening of JOSE LEON-RAMIREZ by:

a.     Failing to have a person in charge of hiring and screening JOSE LEON-RAMIREZ who knew and understood the FMCSR's and the screening and investigation duties imposed on GLOBAL TRANSPORT by the FMCSR's;

b.      Failing to make inquiry as the circumstances under which JOSE LEON-RAMIREZ obtained the commercial driver's license;

c.      Failing to make inquiry into whether JOSE LEON-RAMIREZ had been denied a license to operate a commercial motor vehicle;

d.      Failing to require JOSE LEON-RAMIREZ to sign, complete and certify the truthfulness of the contents his Application for Employment in violation of FMCSR §391.21(b);

e.      Hiring JOSE LEON-RAMIREZ even though he could not satisfy the requirements of FMCSR §391.11 which states that a person is qualified to drive a commercial motor vehicle if he "can read and speak the English language sufficient to converse with the general public;"

f.      Completing the application for JOSE LEON-RAMIREZ in violation of FMCSR §391.21(b) and failing to be sure that all the information required by FMCSR §391.21(b) was provided and certified true by JOSE LEON-RAMIREZ;

g.      Failing to make proper inquiry into JOSE LEON-RAMIREZ's trucking safety training which consisted solely of the seven-day class in Florida in 2011 and failing to make inquiry into JOSE LEON-RAMIREZ's knowledge of the FMCSR's from which it would have been learned that he had never read them and he lacked the essential knowledge and skills required by §383.11 and §383.13;

h.      Failing to make an appropriate and thorough inquiry to JOSE LEON-RAMIREZ regarding past employers and motor carrier employers as required by FMCSR §391.21(10) and (11);

i.      Failing to make an investigation and inquiry into JOSE LEON-RAMIREZ's past employers as required by FMCSR §391.23 and keep a written record regarding its efforts to comply with this FMCSR;

j.      Failing to be familiar with DOT regulations governing driver qualifications and have in place a system for overseeing driver qualification requirements; and

k.      Failing to screen JOSE LEON-RAMIREZ as an ordinary prudent trucking company would have done under the same or similar circumstances.

41.     As a licensed motor carrier in interstate commerce, GLOBAL TRANSPORT had a regulatory and common law duty to train and supervise its drivers in trucking safety and the FMCSR's.

42.     GLOBAL TRANSPORT was negligent in training and supervising JOSE LEON-RAMIREZ by:

a.      Failing to have a person with adequate trucking safety knowledge and knowledge of the FMCSR's to train JOSE LEON-RAMIREZ in violation of FMCSR §392.1 which provides "every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation or driving of commercial motor vehicles, or the hiring, supervising, training, assigning or dispatching of drivers, shall be instructed in and comply with the rules in this part;"

b.      Failing to have in place a system and an individual responsible for ensuring overall compliance with the FMCSR's;

c.      Failing to have a copy of the FMCSR's;

d.      Failing to have a driver safety training/orientation program;

     e.      Failing to have an adequate driver safety training/orientation program;

     f.      Failing to have in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles;

     g.      Having no formal safety program and no written safety policies and procedures;

     h.      Doing nothing to ensure its drivers knew and followed the FMCSR's and failing to provide a copy of the FMCSR's;

     i.      Failing to provide JOSE LEON-RAMIREZ any safety training or any ongoing safety instruction after hiring him;

     j.      Failing to give JOSE-LEON RAMIREZ training on proper visual search, speed management and space management knowledge and skills as required by §383.11 and §383.13;

     i.      Failing to conduct a road test as required by FMCSR §391.31 and/or to keep a written record of the certificate of road test as required by the FMCSR's;

     j.      Failing to have written policies prohibiting cell phone interaction while driving its trucks;

     k.      Failing to enforce any oral policies prohibiting cell phone interaction while driving its trucks and

     l.      Failing to train and supervise JOSE LEON-RAMIREZ in trucking safety as an ordinary prudent trucking company would have done under the same or similar circumstances.

     43.      The negligent acts set forth in Paragraph 40 a.- k. and Paragraph 42 a.-l., which are adopted herein by reference, when viewed objectively from the standpoint of the owner and sole vice-principal of GLOBAL TRANSPORT, Myslan Valdivia, involved an extreme degree of risk,

considering the probability and magnitude of the potential harm to others and Myslan Valdivia had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Accordingly, such acts also constitute gross negligence on the part of GLOBAL TRANSPORT which will be proven by clear and convincing evidence and for which exemplary damages are sought.

44.     The negligent and grossly negligent acts set forth above were the proximate cause of the Crash, Plaintiff's injuries and her resulting damages

## PLAINTIFF'S ACTUAL DAMAGES

45.     Paragraphs 1-44 are adopted by reference herein.

46.     The Crash and the negligence of the Defendants herein proximately caused LAURA LEACH to suffer significant neck and back pain and along with headaches with resulting actual damages.

47.     LAURA LEACH has experienced pain and mental anguish in the past and will continue to do so in the future by reason of the nature and severity of her injuries from the Crash for which she seeks actual damages.

48.     LAURA LEACH has experienced physical impairment in the past and will continue to do so in the future by reason of the nature and severity of her injuries from the Crash for which she seeks actual damages.

49.     LAURA LEACH has incurred reasonable and necessary medical expenses in the past and will continue to do so in the future by reason of the nature and severity of her injuries from the Crash for which she seeks actual damages.

50.    LAURA LEACH has incurred lost wages in the past and will experience lost earning capacity in the future by reason of the nature and severity of her injuries from the Crash for which she seeks actual damages.

51.    Plaintiff's actual damages are in excess of the jurisdictional limits of this Court in that they well exceed $75,000 exclusive of interest and costs.

## EXEMPLARY OR PUNITIVE DAMAGES

52.    Paragraphs 1-51 are adopted by reference herein.

53.    As a result of the gross negligence pled herein, Plaintiff seeks the award of exemplary or punitive damages.

## PREJUDGMENT INTEREST

54.    Plaintiff seeks recovery of prejudgment and post judgment interest in the highest rate allowed by law.

## JURY DEMAND

55.    Plaintiff requests a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff LAURA LEACH prays that Defendants JOSE LEON-RAMIREZ and GLOBAL TRANSPORT CORP be cited to appear and answer herein, and that upon final hearing hereof, Plaintiff receive judgment of and from the Defendants, in the amounts as determined by the Court and Jury, for prejudgment and post-judgment interest at the legal rate, costs of court and for such other and further relief, at law and in equity, to which Plaintiff may show herself justly entitled and for which she prays.

Respectfully submitted,

By:     */s/ Todd Clement*
**Todd Clement** (Attorney-in-Charge)
State Bar No. 04361525
clement@clementfirm.com

**Ragan Speer**
State Bar No. 24072361
ragan@clementfirm.com

**THE CLEMENT FIRM**
17855 Dallas Parkway, Suite 155
Dallas, Texas 75287
(972) 250-9250 – Phone
(972) 535-6358 – Fax

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to the FEDERAL RULES OF CIVIL PROCEDURE on the 30th day of May, 2018, I caused to be electronically filed the forgoing documents with the clerk of the court for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

***Via ECF***
PAUL A. BEZNEY (Attorney-in-Charge)
State Bar No. 000787077
bezney@ahblaw.net

ADKERSON, HAUDER & BEZNEY, P.C.
1700 Pacific Avenue, Suite 4450
Dallas, Texas 75201-7323
214-740-2500 - Telephone
214-740-2501 - Facsimile

ATTORNEYS FOR DEFENDANTS
GLOBAL TRANSPORTATION CORPORATION
AND JOSE LEON-RAMIREZ

*/s/ Todd Clement*
Todd Clement